# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARK DAVID CHANLEY,

    Defendant.

Case No. 2:07-cr-00150-LDG

**ORDER**

## I.    INTRODUCTION

The defendant, Mark David Chanley ("Chanley"), has moved to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. §2255.  Chanley is currently serving a 210-month sentence after a guilty verdict following a bench trial for receipt of child pornography pursuant to 18 U.S.C. § 2252a(A)(2).

In 2007, a Colorado corrections employee contacted the Henderson Police Department because a sex offender inmate ("inmate Weir") was receiving letters and pictures of semi-clothed young boys from a "Marco Donatonelli Cianciulli" located at 516 Mona Lane in Henderson, Nevada.  Officer Michael Gillis ("Officer Gillis") investigated the residence and discovered that Chanley, also a convicted sex offender, lived at the

residence.  Chanley was previously convicted and sentenced to eight years in prison for

sexual assault on a child.  Officer Gillis filed an Application and Affidavit for a Search

Warrant ("affidavit") that contained information from the various letters and describing

certain pictures that Chanley was sending to inmate Weir to support probable cause

justifying a search warrant.  Officer Gillis also listed information about his experience,

knowledge, and training about sexual predators and those that receive and possess child

pornography in his affidavit.  A search warrant was issued and Chanley was arrested after

Henderson police officers recovered 512 images and 22 videos of child pornography at the

residence where Chanley lived with his parents.  With the exception of one computer, all

the evidence seized was located in Chanley's bedroom.

Chanley argues that this conviction was obtained by use of evidence seized during

an unconstitutional search.  He also argues that the search was unconstitutional because

the affidavit filed by Officer Gillis lacked probable cause, contained numerous materially

false statements about the letters and pictures that Chanley mailed inmate Weir, and that

Officer Gillis listed the false information in the affidavit with a reckless disregard for the

truth.  Furthermore, Chanley asserts that if the materially false statements were removed

from the affidavit, it would be void of probable cause.  Chanley asserts that his hired

counsel, Mr. Donald Green ("Mr. Green), was deficient for not comparing the affidavit to the

letters and for not directing the court to the materially false statements in the affidavit in the

first motion to suppress (#20) that Mr. Green filed.  Additionally, Chanley asserts that if Mr.

Green had directed the court to the misstatements contained within the affidavit, a *Franks*

hearing would have been granted and the evidence seized and used to convict Chanley

would have been suppressed.  Chanley argues that he was prejudiced by Mr. Green's deficiencies because he inadvertently waived his right to appeal the decision on his motion to suppress when Mr. Green did not object to the magistrate judge's recommendation denying his motion to suppress (#27).  Now, Chanley asks the court to review the eight grounds in his §2255 motion and provide him relief.

Having reviewed each of the grounds, it appears from the motion and the record of prior proceedings that Chanley is not entitled to any relief.  Accordingly, the court will dismiss the motion for the reasons below.

## II.   PROCEDURAL HISTORY

On May 2, 2007, Chanley was arrested and charged with receipt and possession of child pornography.  In August of 2010, during a one-day bench trial, Chanley was convicted of one count of receipt of child pornography by the United States District Court, District of Nevada.  In 2011, the United States Court of Appeals for the Ninth Circuit affirmed the district court's judgment and in 2012, the Supreme Court denied Chanley's petition for a writ of certiorari.  Subsequently, Chanley filed a §2255 motion (#234).  He also filed several motions to supplement and amend his motion (## 230, 237, 240, 243, 244, 245), which this court granted.  Then, in 2013, Chanley filed a justification for a *Franks v. Delaware* hearing (#263).  Also, Chanley submitted a petition for writ of mandamus to the United States Court of Appeals for the Ninth Circuit (#264), which the Court of Appeals denied (#266).

As noted, in addition to filing a lengthy §2255 motion (#234), Chanley filed several documents seeking leave to amend or supplement his motion (## 230, 237, 240, 243, 244, 245).  To ensure that Chanley received the opportunity to present his grounds for relief and

theories in support of those grounds, this court granted Chanley's requests to supplement, and granted the government time to respond to the §2255 motion as set forth in the original motion and the supplements.  The government opposed Chanley's §2255 motion and addenda (#252).  Chanley then filed a reply/opposition to the government's response to the supplemental cases and arguments (#267).

Initially, after Chanely's arrest in 2007, the court appointed Richard Frankoff ("Mr. Frankoff"), an Assistant Federal Public Defender, as counsel.  *See* CR 10.  Shortly after Mr. Frankoff was appointed as counsel, Chanley filed a motion to substitute retained counsel, Donald J. Green ("Mr. Green"), for appointed counsel.  *See* CR 15.  However, in 2009, Chanley filed a motion to terminate Mr. Green as counsel and requested that the court appoint him counsel.  *See* CR 61.  The court granted Chanley's motion and re-appointed Mr. Frankoff.  Mr. Frankoff resigned from his position at the federal public defender's office and as a result, Ms. Rebecca Rosenstein ("Ms. Rosenstein") was appointed as Chanley's counsel.  *See* CR 91.  Chanley asked the court to appoint new counsel and provide him the opportunity to present his evidence to the court because he asserts that he was disappointed in Ms. Rosenstein's performance for failing to follow his directions and legal directives.  *See* CR 96.  Before the court could grant his motion, Chanley filed another motion to dismiss Ms. Rosenstein and proceed pro se.  *See* CR 99 and 103.  The court granted the motion, permitting Chanley to represent himself and appointed Rene Valladares ("Mr. Valladares") to act as advisory counsel.  *See* CR 106 and 107.  Shortly before trial, Chanley requested that Mr. Valladares act as appointed counsel.  *See* CR 149.  After his conviction in 2010, Jason Carr (Mr. Carr) was assigned to serve as

Chanley's counsel on appeal.  *See* CR 194.  Currently, Chanley is proceeding pro se on his §2255 motion.  *See* CR 234.

## III.   FACTUAL BACKGROUND

On March 28, 2007, Mr. Henry Ybarra from the Mental Health Department of the Arkansas Valley Correctional Facility in Crowley, Colorado, contacted Officer Gillis about inmate Weir, who was receiving mail correspondence and pictures from Chanley.  The mail correspondence and pictures were used as support for five of the eighteen facts (facts ## 2, 5, 6, 7, 9) that Officer Gillis would subsequently list in his affidavit.  *See* CR 24-2.   On April 30, 2007, Judge R. Burr granted Officer Gillis's search warrant.

Chanley's primary ground for relief in his §2255 motion is that he was denied effective assistance of counsel.  *See* CR 234, 243, 244.  Chanley alleges that his retained counsel, Mr. Green, failed to fully litigate the issues in Officer Gillis's affidavit.  Mr. Green, on Chanley's behalf, filed a timely motion to suppress all items of evidentiary value seized during the May 2007 search of Chanley's residence (#20).  In the same motion, Mr. Green requested a *Franks* hearing to determine if the affidavit provided sufficient probable cause to warrant the search of Chanley's residence (#20).  The government responded to Chanley's motion (#23).  The magistrate judge denied the motion (#27) and Mr. Green did not object to the judge's decision, waiving Chanley's right to appeal the issue.

Chanley asserts that Mr. Green was deficient for failing to fully investigate the affidavit by comparing the facts of the affidavit to the letters and pictures that Chanley allegedly mailed to inmate Weir.  Chanley further asserts that if Mr. Green had fully investigated the alleged discrepancies in the affidavit, his motion to suppress would have

met the basic requirements justifying a *Franks* hearing.  Upon completion of a *Franks* hearing, Chanley argues that the Court would have ruled that Officer Gillis's affidavit lacked probable cause, thus the search of his residence would have been declared unconstitutional and the evidence seized would have been suppressed.  Furthermore, Chanley claims to have been unduly prejudiced by Mr. Green's actions because Chanley is unable to appeal or further litigate the alleged discrepancies in Officer Gillis's affidavit.

Chanley also alleges that his conviction was obtained by evidence gained pursuant to an unconstitutional search and seizure because Officer Gillis's affidavit contained numerous materially false statements that were made with a reckless disregard for the truth.  Furthermore, Chanley claims that if the false statements are excised, the affidavit lacks probable cause. *See* CR 234, 237, 244, 245.  The government admitted on appeal that Officer Gillis's affidavit incorrectly stated one fact regarding the use of a "pay site" to find photographs.  However, the government asserts that the record indicates that Officer Gillis's one misstatement was not intentional or reckless.  *See* CR 252.

Additionally, Chanley alleges that the grand jury indictment was obtained through the misconduct of prosecutor, Nancy Koppe ("Ms. Koppe"), who subordinated perjury from the testimony of witness Officer Jamie Brooks ("Officer Brooks").  *See* CR 234, 240.  Chanley asserts that Ms. Koppe asked Officer Brooks specific questions that solicited responses that were false and misleading regarding Officer Gillis's affidavit.  Chanley states that because the government has admitted to the one false statement in Officer Gillis's affidavit, that both Ms. Koppe and Officer Brooks knew or should have known the testimony used in obtaining the indictment against him was false.

6

Also, Chanley asserts that his verdict was obtained via a vindictive prosecution and prosecutorial misconduct by the government.  *See* CR 234, 240.  Chanley alleges that his counsel, Mr. Frankoff, approached Ms. Koppe and received personal assurances from her that the government would not object to Chanley's second motion to suppress (#77) as being time-barred or otherwise barred procedurally.  However, contrary to this asserted personal assurance of the prosecutor, the government opposed the motion as untimely. *See* CR 78.  Chanley presents Ms. Koppe's actions as evidence of the government's vindictiveness, as well as evidence for ethical and prosecutorial misconduct.

In addition to the other claims listed above, Chanley asserts that there was insufficient evidence submitted at trial to sustain his conviction on either count of the indictment.[1]  *See* CR 234.  First, Chanley argues that there is no direct evidence that exists linking him to the contraband seized.  Second, Chanley argues that there are no witnesses that saw him view the alleged contraband and that the government failed to prove that he knew of the alleged illegal contraband.  Not only does Chanley claim there was insufficient evidence to convict him, Chanley also alleges that his conviction was obtained through the introduction of evidence after the close of his bench trial, thus violating his right to confront and examine the evidence.  *See* CR 234.  Chanley's counsel, Mr. Valladares, filed a Rule 29(a) motion for judgment of acquittal (#180) that included the claim that the government

[1]    Because both counts were based on the same acts, the double jeopardy clause of the Fifth Amendment prohibits a judgment of conviction on both counts.  The Ninth Circuit has clarified that possession of child pornography is a lesser included offense of receipt of child pornography.  *See United States v. Davenport*, 519 F.3d 940, 947 (9th Cir. 2008).  Thus, the Court ordered that the conviction be entered against Chanley solely as to Count 1, receipt of child pornography.  However, the court ordered that a Judgment of Conviction not be entered but stayed as to Count 2 of the Indictment, and such stay of conviction as to Count 2 would be without prejudice to the entry of a Judgment of Conviction as to Count 2 should Chanley's conviction on Count 1 be overturned on direct or collateral review.  *See* CR 175.

did not prove that Chanley knowingly received child pornography within the five-year statute of limitations.  The government's response (#183) to the motion for judgment of acquittal listed Exhibits 3A, 3B, 3C, and 12 which include videos and photographs of child pornography Chanley received in or after 2007.  Chanley asserts that the government performed an exhaustive forensic search of the seized computer data after the close of his trial to defeat his statute of limitation claim.

Additionally, Chanley expands upon his ineffective assistance of counsel claim by stating that his conviction is unconstitutional because his Sixth Amendment rights and statutory rights to a speedy trial were violated.  *See* CR 234.  Chanley challenges that Mr. Green filed multiple continuances (## 18, 25, 36, 40, 42, 56) without consulting him first. While Chanley was acting as his own attorney with permission of the court, he notified the court of the speedy trial violations in his motion to dismiss the indictment (#111), which this court struck.  While Chanley's counsel, Mr. Carr, raised this issue on appeal, and the Ninth Circuit rejected the argument, Chanley alleges that his counsel's performance before the Ninth Circuit was half-hearted because the appeal lacked the factual details necessary to prove his claim.

In closing, Chanley contests the final forfeiture order and alleges that the order was a direct violation of his Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendment rights and must be vacated.  *See* CR 234.  Chanley asserts that both his retained and appointed counsel failed to protect his personal property interests.  Furthermore, Chanley maintains that the search of his residence in 2007 was unconstitutional and he demanded his counsel to take action to garner the return of his unlawfully seized property.

## IV.    ANALYSIS

As the amended §2255 motion is now before the Court, with eight grounds for relief, the court has considered if Chanley stated enough facts to support any of his grounds for relief; that is, whether it appears from the motion–in the context of the record of the prior proceedings–that good cause appears for an evidentiary hearing as to any ground, and whether the record–or the allegations–relevant to any of Chanley's grounds for relief require dismissal of that ground for relief.

### A.    Dismissal of issues raised on direct appeal.

Chanley's counsel, Mr. Carr, argued to the Ninth Circuit Court of Appeals that the district court erred in denying Chanley's motion to suppress as untimely; that Chanley's speedy trial rights were violated; and that there was insufficient evidence to support Chanley's conviction for receipt of child pornography.  The Ninth Circuit affirmed the district court's decision and denied Chanley's appeal.  In Chanley's amended §2255 motion, two of his eight grounds for relief (grounds five and six) repeat issues that were raised on direct appeal.  Chanley is barred from re-raising these issues in his §2255 motion.

A §2255 motion may not attack issues that were raised at trial and considered on direct appeal. *See Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975).  In *Egger*, the defendant attempted to reargue an issue raised and found unworthy of discussion on appeal regarding a witness using notes from a tape recording to refresh her memory of a conversation between her and the defendant.  *Id.*  However, in *Egger* the defendant asserted that his §2255 motion raises a separate, and more general, objection that was not considered on direct appeal.  *Id.*  The Court disagreed and found that the general objection

9

in the defendant's §2255 motion was no different than the specific objection made on appeal and concluded that the grounds raised in the original appeal were not subject to further collateral attack in a §2255 motion.  *Id.*

Unlike the defendant in *Egger* who argued that the general objection in his §2255 motion was different than the specific objection made on appeal, Chanley does not contest that the issue he raises in ground five was already raised on direct appeal.  The record further confirms the issue was raised on direct appeal.  Mr. Carr, on Chanley's behalf, argued that Chanley's conviction was unconstitutional because his Sixth Amendment Rights and statutory rights to a speedy trial were violated.  The Ninth Circuit Court of Appeals rejected this argument, determining that Chanley's right to a speedy trial was not violated because he consented to the continuances of his trial; justice was obtained because of the continuances; and Chanley failed to demonstrate that he was prejudiced by the continuances.  See *United States v. Drake*, 543 F. 3d 1080, 1085-86 (9th Cir. 2008) (court analyzes a Speedy Trial Clause claim by applying the four-part test established by *Barker v. Wingo*, 407 U.S. 514, 530 (1972); the four factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant).

In ground five, Chanley again seeks an opportunity to argue that his speedy trial rights were violated.  The majority of Chanley's alleged indisputable facts listed in his amended §2255 motion are about three continuances that Mr. Green requested (## 36, 40, 42), and merely re-state the issue raised on appeal.  Accordingly, Chanley is barred from again asserting a violation of his speedy trial rights.

Further, even if the Court were to consider the ground, the Court would deny the

ground on its merits.  A review of the record shows that Mr. Green filed six continuances (## 18, 25, 36, 40, 42, 56) which the court granted (## 19, 26, 37, 41, 43, 59) before Chanley filed a motion to terminate Mr. Green as counsel (#61).  There were two other continuances filed by Chanley's counsel, Mr. Frankoff, (## 72, 82) which the court granted (## 76, 88).  Chanley does not contest the continuances filed by Mr. Frankoff, but instead argues that the court erred when it struck his motion to dismiss the indictment (#111), which presented the speedy trial violations allegedly committed by his former counsel, Mr. Green.

Chanley argues in his §2255 motion that the court erred in granting Mr. Green's stipulations as a means to fulfill the "ends of justice."  Furthermore, Chanley asserts that his case was neither unusual nor complex for the court to grant Mr. Green's stipulations.  As stated by 18 U.S.C. § 3161(h)(7)(A)-(C), delays resulting from continuances granted by the court are not excludable under subsection (h) unless the court sets forth in the record either orally or in writing the reasons for granting the continuances.  Furthermore, the statute also lists factors that a judge can consider in determining whether to grant a continuance under subparagraph (A).  Chanley argues that the stipulations Mr. Green filed did not meet any of the factors.  A review of the record shows that the court entered written findings with reasons for each of the stipulated requests filed by both Mr. Green and Mr. Frankoff.  Thus, the court complied with the requirements of 18 U.S.C. § 3161(h)(7), and Chanley is not entitled to any relief on ground five.

Chanley argues in ground six that there was insufficient evidence submitted at trial to sustain his conviction on either count of the indictment.  This issue was also raised on

appeal.  Again, for this reason alone, Chanley is precluded from raising this argument in his §2255 motion, and dismissal of the ground is appropriate.  Nevertheless, while it is not necessary for this court to consider ground six because it was raised on direct appeal, *See Egger*, 509 F.2d 745, 748, a review of the record establishes that Chanley is not entitled to relief.  According to 18 U.S.C.A. § 2252A, to convict a defendant of receipt and possession of child pornography, the government has the burden of showing beyond a reasonable doubt that the defendant (a) knowingly received and possessed (b) any child pornography or any material that he knew contained child pornography (c) that was mailed, shipped, transported in, or affected interstate or foreign commerce by any means, including by computer ("the interstate nexus").  To determine if evidence is sufficient to sustain a conviction of child pornography, the court "views the evidence in the light most favorable to prosecution and determines whether any rational trier of fact could have found the defendant guilty of each element of the crime beyond a reasonable doubt."  *United States v. Heller*, 551 F.3d 1108, 1113 (9th Cir. 2009) (citation, alteration, and internal quotation marks omitted).

Chanley previously stipulated that all images and videos entered into evidence are child pornography.  A total of 512 images and 22 videos were recovered from three different computers (Exhibits 2, 4 and 5), three CDs  (Exhibits 3A, 3B, and 3C), and a folder containing printed images (Exhibit 1). The record shows that the court found, beyond a reasonable doubt, that printed images stored in the Exhibit 1 folder were child pornography, that images and videos stored on Exhibits 3A, 3B, and 3C, were child pornography, and that the images and videos offered into evidence on Exhibits 6, 8 and 9

were child pornography.  All of the images and videos were seized in Nevada during the

execution of a search warrant.  The three computers, three CDs, and the folder of printed

images were located in a single residence.  With the exception of one computer, the other

items were located in a single bedroom within the residence.  The room contained mail

addressed to the defendant and mail addressed to "Marco Cianciulli."  No other items were

located in that bedroom indicating that any person other than Chanley used the bedroom.

Accordingly, the bedroom in which these items were located was Chanley's bedroom.

Furthermore, Chanley previously stipulated that the images and videos contained in

Exhibits 8 and 9 were produced outside of Nevada.  At least three of the videos contained

in Exhibit 6 were produced outside of Nevada.  All of the images and videos were seized in

Nevada during the execution of the search warrant.  The file path for at least two images

stored on the Exhibit 4 computer, "P1010083_0.JPG" and "P1010347.jpg" includes the

term "alt.fan.prettyboy," which is the name of a usenet site on the internet.  The file path for

images on the Exhibit 3B CD includes the terms "alt.bainaries.pictures.boys.barefoot,"

"alt.sex.boys," and "alt.sex.pedophelia.boys."  The file paths that include these terms were

used to store images of child pornography on Exhibit 3B.  Numerous images of child

pornography on Exhibit 3B include text referencing the internet or internet websites or

addresses.  Child pornography on Exhibit 3A was from the KDV series produced in Russia.

Numerous images of child pornography include text indicating its production in Russia. The

court found, beyond a reasonable doubt, that at least the following images and videos met

the element of an interstate nexus: images and video on Exhibits 3A, 3B, or 3C for which

the file name or content indicates it is part of the KDV series or was otherwise produced in

Russia; images on Exhibit 3B whose file path includes the terms "alt.bainaries.pictures.boys.barefoot," "alt.sex.boys," and "alt.sex.pedophelia.boys; images of child pornography on Exhibits 3A, 3B, and 3C whose content includes text–such as ".com"–referencing the internet; three videos on Exhibit 6–"RIDING DADDY.mpg," "AO6.mpg," and "pr_16_mpeg384.mpg"–; and, all of the images and videos on Exhibits 8 and 9.

Because it has been previously stipulated that the evidence is child pornography and that some of the images and videos met the element of an interstate nexus, the court only needed to determine if the evidence used to convict Chanley was sufficient to demonstrate that he knowingly received and possessed child pornography.  Chanley's primary argument in ground six is that there was no direct evidence linking him to the child pornography contraband in question.  Additionally, Chanley asserts that unlike previous child pornography convictions upheld by the Ninth Circuit Court of Appeals where the cases had a guilty plea, a confession, or a witness, there was no evidence in Chanley's case that he pled guilty, confessed, or that a witness saw Chanley receive or possess child pornography.  However, Chanley misreads the statutory language in 18 U.S.C.A. § 2252A. As previously determined by the Ninth Circuit, "knowingly possessed," as defined in 18 U.S.C. § 2252A, has the traditional meaning of "having or holding property in one's power; the exercise of dominion over property."  *U.S. v. Romm*, 455 F. 3d 990, 999 (9th Cir. 2006) (citation, alteration, and internal quotation marks omitted).  Thus, to sustain a child pornography conviction on receipt and possession, the government does not have the burden, and is not limited, to direct evidence, as Chanley suggests.  Rather, the

government can meet its burden by offering evidence, whether direct or circumstantial, that establishes a sufficient connection between Chanley and the child pornography to support the inference that he exercised dominion and control over it. *Id.*

The child pornography was seized from a single residence, and with the exception of one computer, all of the items seized were located in a single bedroom within the residence. The room was Chanley's bedroom. The location of the child pornography, combined with the method used to label and organize the files, was sufficient evidence to support the inference that Chanley exercised dominion and control over it. Therefore, the evidence was sufficient to support both counts of Chanley's conviction. The record shows that the government achieved its burden by proving beyond a reasonable doubt that Chanley knowingly received and possessed child pornography for which there was an interstate nexus for receipt and possession. Thus, even if Chanley was not barred from raising ground six as previously raised on direct appeal, the Court would nevertheless dismiss this ground for relief because the record, and particularly the evidence the Court received during the bench trial in this matter, is sufficient to sustain Chanley's conviction.

**B.      Dismissal of request for relief from final order of forfeiture.**

Chanley challenges this court's forfeiture order in ground seven of his §2255 motion. The purpose of a §2255 motion is to provide federal prisoners a vehicle to challenge sentences that are unconstitutional, imposed without jurisdiction, in excess of the maximum amount authorized by law, or otherwise subject to a collateral attack. *See* 28 U.S.C. §2255(a). While Chanley argues that the final order of forfeiture was in direct violation of his Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendment rights, he is not requesting

relief from his sentence.  Thus, Chanley is not permitted to challenge the final order of

forfeiture in his §2255 motion and is not entitled to any relief on ground seven.  The Court

will dismiss this ground for relief.

### C.   Chanley's conviction rested upon evidence admitted and received during the trial.

Chanley argues in ground three that his conviction was obtained through the

introduction of evidence that the Court received after the close of his trial.  He supports this

claim by asserting that the court waited weeks to rule on his 29(a) motion for a judgment of

acquittal (#167), which motion argued that the government failed to establish that he

received the child pornography within the five-year statute of limitations.  Chanley alleges

that after he filed his 29(a) motion, the court conducted an exhaustive forensic analysis of

the computer data seized to find files that could possibly discredit his statute of limitations

claim.  Furthermore, because the court allegedly conducted this forensic analysis after his

trial, Chanley did not have the chance to examine all the evidence used against him.

The court listed the evidence it considered in its specific findings of fact pursuant to

Federal Rule of Criminal Procedure 23(c).  *See* CR 175.  The record identifies the evidence

upon which the Court relied in convicting Chanley.  None of that evidence was introduced

after the close of trial to obtain his conviction.  A review of the record offers specific findings

of fact with respect to the evidence admitted at trial, upon which Chanley was convicted of

receipt and possession of child pornography (#175).  The court viewed a total of 512

images and 22 videos that were recovered from three different computers (Exhibits 2, 4

and 5), three CDs (Exhibits 3A, 3B, and 3C), and a folder containing printed images

(Exhibit 1).  All of this evidence was received during the trial.  Evidence was received by the

Court, during the trial, establishing that Chanley received more than one image or video of child pornography during the year 2007 (Exhibits 3A, 3B, 3C, 12), which was the year he was indicted.  The government met its burden by offering sufficient evidence during Chanley's bench trial that he knowingly received and possessed, within the five-year statute of limitations, images and videos of child pornography, and that some of those images and videos had an interstate nexus.

According to 28 U.S.C. §2255(b) when the motion and the files and records of the case conclusively show that the prisoner is not entitled to any relief, then a hearing to determine the issues and make findings of fact and conclusions of law is not necessary. The record conclusively shows that Chanley is not entitled to any relief on ground three. For example, Chanley's argument that the reason it took the court a suspicious amount of time to deny his Rule 29(a) motion was because the court performed an exhaustive forensic analysis of the child pornography to disprove his statute of limitation claim, contradicts the record.  Chanely's counsel, Mr. Valladares, filed Chanely's Rule 29(a) motion (#167) on April 21, 2010.  While the government had until May 8, 2010 to respond, it responded to Chanley's motion within two days (April 23, 2010).  *See* CR 171.  In the government's response to Chanley's statute of limitation claim, it directs the court to view Exhibits 3A, 3B, 3C, and 12 which contained images and videos of child pornography that Chanley received in 2007.

The record conclusively identifies the evidence the court viewed at trial.  The record conclusively shows that some images and videos of child pornography were received within the five-year statute of limitations. Chanley's claim that his conviction was obtained through

the introduction of evidence after the close of his trial and that he did not have a chance to confront and examine the evidence submitted after trial is a conclusory statement without any factual basis.  When a defendant's claims in his §2255 motion are conclusory statements without factual basis, the court may dismiss them.  *See Wagner v. United State*, 418 F. 2d 618, 621 (9th Cir. 1989).  Because the record contradicts Chanley's claim in ground three and conclusively shows that the only evidence the Court considered in convicting Chanley  of receipt and possession of child pornography was admitted and received during the trial, the court views his claim as a conclusory statement without factual basis.  Therefore, Chanley is not entitled to any relief on ground three, and the Court will dismiss this ground for relief.

> **D.    The record is sufficient to establish that Chanley's ineffective assistance of counsel claims, including his second ground for relief, are without merit.**

Chanley alleges that Mr. Green provided deficient counsel.  However, Chanley is unable to demonstrate that, but for Mr. Green's alleged deficient performance, the outcome of his conviction would have been different. To prevail under a 28 U.S.C. § 2255 ineffective assistance of counsel claim, Chanley must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness (the "deficiency" prong); *and* (2) that counsel's deficient performance prejudiced Chanley (the "prejudice" prong). *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The Supreme Court has emphasized that the movant must make a compelling evidentiary showing in order to satisfy the deficiency prong:

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an

> objective standard of reasonableness. A court considering a
> claim of ineffective assistance must apply a strong presumption
> that counsel's representation was within the wide range of
> reasonable professional assistance.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (internal citations and quotations omitted).

The Court reviews ineffectiveness claims against the backdrop of the "strong presumption

that counsel's representation was within the wide range of reasonable professional

assistance." *Stokley v. Ryan*, 659 F.3d 802, 811-12 (9th Cir. 2011).  There is no

constitutional deficiency where counsel fails "to raise a meritless legal argument," *Shah v.

United States*, 87 F.3d 1156, 1162 (9th Cir. 1989), or where a "movant's allegations,

viewed against the record" are "palpably incredible or patently frivolous." *United States v.

Burrows*, 872 F.2d 915, 917 (9th Cir. 1989). "Deficiency," therefore, imposes on the movant

the "burden . . . to show that counsel made errors so serious that counsel was not

functioning as the counsel guaranteed Chanley by the Sixth Amendment." *Harrington*, 131

S. Ct. at 787.

The prejudice prong is just as strict. The movant must demonstrate a "reasonable

probability that, but for counsel's deficiency, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694 (a "reasonable probability" is a probability "sufficient

to undermine confidence in the outcome"); *see also Wong v. Belmontes*, 130 S. Ct. 383,

390–391 (2009) (burden on claimant) (quoting *Strickland*, 466 U.S. at 694); *United States

v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994) (in addition to defective performance,

movant "must also meet the substantial burden" of establishing prejudice). The movant

thus does not prove prejudice by (1) listing the things he thinks his attorney "should have

done," and then (2) speculating that, had he done them, there might have been a different

outcome. Rather, the movant must state the *specific facts* that – but for counsel's deficient performance – would have likely produced a more favorable result. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

While Chanley lists a plethora of reasons speculating why Mr. Green was deficient in his amended §2255 motion,[2] his request for relief rests primarily upon his allegations that Mr. Green filed a deficient motion to suppress that failed to raise various arguments as to why the evidence used to convict him was obtained by an unconstitutional search. Chanley has set forth those arguments in his second ground for relief, in which he argues, *inter alia*, that Officer Gillis's affidavit contains numerous false statements material to a finding of probable cause, that Officer Gillis failed to attach necessary evidence to his affidavit, that the affidavit failed to establish that the information was not stale, that the state-issued search warrant was invalid under the federal rules of criminal procedure, and that the affidavit was insufficient to establish probable cause.  Chanley also contends that Mr. Green was deficient in failing to submit Chanley's letters in support of the motion to suppress, and in failing to object to the magistrate judge's decision to deny Chanley's motion to suppress (#27).   Chanley alleges he was prejudiced because, had his counsel provided the court with his letters and the associated arguments, the court would have granted him a *Franks* hearing.  Chanley further asserts that, following a *Franks* hearing, or upon consideration of the arguments set forth in his second claim, the court would have found the warrant unconstitutional and would have suppressed the evidence used to

---

[2]  Chanley provided the court with additional reasons for Mr. Green's deficiencies such as Mr. Green's son being ill with non-hodgkins lymphoma; Mr. Green's medical conditions; and a recent Supreme Court of Kansas decision that determined that attorneys, like Mr. Green, who charge flat-fee rates to clients tend to be deficient because they lack the incentive to devote the time necessary to their clients.

convict him.  Thus, Chanley concludes, he has shown he was prejudiced by Mr. Green's

deficiencies in litigating the motion to suppress.

While Chanley argues that a hearing is necessary to establish that Mr. Green was

deficient, the record is sufficient–without the need for a hearing--to allow the court to

determine that Chanley is not entitled to relief for Mr. Green's alleged deficiencies.

For purposes of the present motion, the Court assumes that Mr. Green was deficient

in failing to object to the magistrate judge's report and recommendation that the original

motion to suppress be denied.  That failure ultimately cost Chanley the opportunity to

appeal the denial of that original motion.  However, as Chanley makes clear in his motion,

he believes the original motion was not meritorious.  Chanley does *not* contend in his

§2255 motion that, if Mr. Green had filed objections consistent with his original motion to

suppress, that this court would have granted the motion to suppress.  Rather, he now

seeks relief because Mr. Green made "grievous errors" in the original motion, including the

failure to assert various arguments, including those set forth in his second ground for relief.

Chanley asserts that, in failing to object, Mr. Green failed to correct the errors of the original

motion.  As a result, Chanley argues he was deprived of the opportunity to litigate

arguments Mr. Green did not make in the original motion, and to have any court consider

those arguments on the merits.  Thus, the relief Chanley now seeks rests upon the

asserted prejudice of losing the opportunity to litigate arguments that Chanley has

unsuccessfully attempted to have this court consider on the merits but that were not

included in Mr. Green's original motion.

Chanley has, at various times, presented the court with the arguments he asserts

that Mr. Green should have raised in arguing the motion to suppress.  He has previously

asserted (and continues to assert in his §2255 motion) that Officer Gillis's affidavit was

unconstitutional because it consisted of numerous false statements.  See, *inter alia*, Doc.

#105.  He has attempted to argue (and again argues in his §2255 motion) that the affidavit

was insufficient because it did not establish probable cause, and because it did not

establish the information was not stale.  See, Doc. #77.   He has also submitted into the

record the supplemental documentation (his letters, and Officer Gillis's affidavit) that he

argues Mr. Green should have submitted with the motion to suppress and its request for a

*Franks* hearing.  See, Doc. #132.  Officer Gillis's affidavit was also submitted into the

record by the government in response to Mr. Green's motion to suppress.  See, Doc. #24.

As such, the record is sufficient to determine whether Chanley was prejudiced by Mr.

Green's litigation of the motion to suppress; that is, the court can determine whether a

reasonable probability exists that it would have granted the motion to suppress if Mr. Green

had presented all of the arguments and evidence that Chanley has subsequently raised in

which he contends that the evidence should have been suppressed.   Having considered

the record, and the arguments Chanley has made to this court, the court finds that Chanley

has not shown that he was prejudiced.

   **i.**   **Chanley has not shown that he was entitled to a *Franks* hearing.**

  "A defendant is entitled to an evidentiary hearing if he 'makes a substantial

preliminary showing that a false statement knowingly and intentionally, or with reckless

disregard for the truth, was included by the affiant in the warrant affidavit, and if the

allegedly false statement is necessary to the finding of probable cause.'" *United States v.*

*Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).   "The probable cause standard for a search warrant is whether, based on common sense considerations, there was 'a fair probability that contraband or evidence of a crime [would] be found in a particular place.'" *United States v. Ruiz*, ___ F.3d ___, 2014 WL 3377345, *3 (9th Cir., July 11, 2014) (quoting *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992)).

The court begins its analysis by determining whether Officer Gillis's affadivat contains any false statements.  Chanley argues that each of the facts of Officer Gillis's affidavit concerning his letters--Facts 2, 5, 6, 7, and 9–are false.  On January 28th, 2010, Chanley submitted supplemental documentation to the court requesting consideration of that evidence.  *See* CR 132.  The supplemental documentation consisted of Officer Gillis's affidavit along with Chanley's arguments as to which facts should be excised from the affidavit (facts ## 2, 5, 6, 7, 9).  Additionally, Chanley submitted the letters he sent to inmate Weir (and which were the basis of Officer Gillis's affidavit) and underlined specific sentences from those letters as support for why Facts 2, 5, 6, 7, and 9 were false and should be excised from the affidavit.  Chanley's arguments rest upon directing the court's attention to specific sections in the letters.  However, the court must review the letters in their entirety, not just the portions to which Chanley wishes to direct and limit this court's attention.  The court has reviewed the affidavit, in light of Chanley's supplemental documentation, with the purpose of determining which of the contested facts are accurate, which contested facts are reasonable inferences that can be drawn from Chanley's letters, particularly given the context of inferences that can be drawn by someone of Officer Gillis's

experience, knowledge, and training about sexual predators and those that receive and

possess child pornography, and to determine which contested facts are false.

### a. Identifification of "Cianciulli" as the author of the letters.

In Facts 2, 5, 6, and 7, Officer Gillis identifies "Cianciulli" as the author of the letters

that inmate Weir received.  Throughout these statements, Officer Gillis uses language such

as "Cianciulli talks of . . .," "Cianciulli also includes . . .," "Cianciulli describes . . .," and

Cianciulli explains . . .."  (In Fact 9, Officer Gillis wrote that "Chanley explains . . ..")

Chanley challenges Officer Gillis's use of the name "Cianciulli" in attributing the statements

made by himself in the letters, as the author of those letters.  He has asserted, to this court,

that the letters unambiguously identify himself as either "Mark D. Chanley" or "Mark David

Chanley-Cianciulli."  The first letter referenced in the affidavit, in Fact 2, is dated March 11,

2007.  In that letter, Chanley identifies himself at the top of the letter as "Mark David

Chanley-Cianciulli."  At the bottom of that letter, Chanley typed the name "Marco," and he

added a further signature.  The second letter referenced in the affidavit, in Fact 5, is dated

February 24, 2007.  While Chanley signed that letter, he did not type his name either as

"Chanley," or as "Chanley-Cianciulli."  Chanley did sign that letter, and asserts the

signature is "Mark D. Chanley."  The third letter referenced in the affidavit, in Facts 6 and 7,

is initially dated March 17, 2007.  In that letter, Chanley types the name "Mark D. Chanley,"

but signed the letter with a signature similar to the one he used under the name "Marco."

The court notes that, at the outset of his affidavit, Officer Gillis states that he was

contacted by Ybarra, of the Mental Health Department, of the Arkansas Valley Correctional

Facility in Crowley, Colorado.  In Fact 2, Officer Gillis begins by averring that Ybarra had

advised him by telephone and mail correspondence that an inmate had been receiving mail

from "Marco Donatonelli Cianciulli 516 Mona Ln. Henderson, NV 89015."  In Fact 8, Officer

Gillis averred that "Mark David Chanley" was "registered for Sexual Assault on a child at

516 Mona LN Henderson, NV 89012."  Officer Gillis further states in Fact 8 that a check of

Chanley's history showed "him being arrested 01-01-94 for Sexual Assault/Child from

Fountain PD in the Denver Colorado area," and that Chanley pled guilty and was

sentenced.  Finally, in Fact 9, Officer Gillis states his belief that "Marco Donatonelli

Cianciulli" was an AKA for Mark David Chanley.  Officer Gillis also avers that, in the letters,

"Chanley explains of his intention to gain his 'birthright Italian Citizenship' to allow him to

work anywhere in the European Union."

The court finds that Officer Gillis's primary use of the name "Cianciulli" to attribute

statements Chanley made in the letters was neither deceptive nor false.  Chanley does not

dispute that he authored all three letters to which Officer Gillis referred.  As further noted by

Chanley, he identifies himself in one letter as "Chanley-Cianciulli," signed his name as

"Marco," and identified himself as "Chanley" in another letter.  As explained by Officer Gillis,

his involvement in the matter began when he was contacted by an official from a Colorado

prison concerning mail an inmate was receiving from "Marco Donatonelli Cianciulli."  Officer

Gillis also averred his belief that Cianciulli was an alias that Chanley used.  In support,

Officer Gillis revealed, inter alia, that he had established that Chanley lived at the same

address that Ybarra identified as the mailing address for Cianciulli.  Taken as a whole, the

affidavit establishes that Officer Gillis received information that "Cianciulli" was sending

letters to an inmate, establishes certain content from those letters, and establishes that

"Cianciulli" was an alias that Chanley used.  Thus, Officer Gillis's use of Chanley's alias--

Cianciulli–in revealing the content of the letters was not deceptive or false.

**b.       Officer Gillis's belief as to why Chanley used an alias.**

In Fact 9, Officer Gillis stated his belief that Chanley used an alias "due to the fact

that he is not trying to draw attention to himself or his criminal history."  Chanley suggests

this is false, asserting to this court that, in the letters, he openly talks of being a "SO"

[Sexual Offender], and his "Tier 2" rating.  Chanley's challenge of Officer Gillis's stated

belief as to why Chanley used an alias is without merit.

The court notes that, immediately after acknowledging that he was rated "Tier 2,"

Chanley indicated both that he was engaged in an effort to rebut the evaluation, and that

he was "sending them [the state] notice that my name(s) are my private property (common

law copyright) and that I do not give them permission to use my property for any reason,

and served them with a 'Notice by Written Communication/Security Agreement' which

pretty much spells out the consequences they will endure if they use my name (publish it,

use it in any email(s), fakes, or any other way)."  In subsequent letters, Chanley placed a

copyright symbol–©–behind his name.  In Fact 9, Officer Gillis also noted that "Chanley

explains [in his letters] of his intention to gain his 'birthright Italian Citizenship' to allow him

to work anywhere in the European Union."  This statement accurately reflects a statement

Chanley made in his Feb. 24, 2007 letter: "I am also working on obtaining my birthright

Italian Citizenship which will allow me to work anyplace in the European Union."  While

Chanley may have been open about his past criminal history in his letters to an inmate also

convicted of a sexual offense, those letters indicate that Chanley also engaged in efforts to

26

preclude the state from using his name in relation to his criminal history, and was

attempting to gain Italian citizenship to allow him to work in the European Union.  Officer

Gillis could properly draw the inference and belief that Chanley was using the Cianciulli

alias in an effort to not draw attention to himself and his criminal history.

### c.    Fact 5.

Chanley contests Fact 5 of Officer Gillis's affidavit, which states:

> That Ybarra provided Affiant with a second envelope including a letter
> and 25 pictures of young boys from Cianciulli to Weir.  Cianciulli stated in the
> letter that the young boys included in his collections of pictures and using a
> "pay" site to find them [sic]. He further states that he is using his sister's
> connectivity and personal computer that he lives with to gain access to the
> internet.  Cianciulli asks Weir, "Do you want me to download something for
> you?"

First, Officer Gillis's affidavit accurately reflects Chanley's statements, in his letter, that

Chanley lived with his sister, was using her computer, and her internet activity.  Second, it

is also accurate that Chanley asked inmate Weir if he could download something for him.

Third, in light of Officer Gillis's experience and training, a reasonable inference can be

drawn from Chanley's letters that the pictures of young boys included with the letter were

from Chanley's collections of pictures.  Fourth, as the government has conceded, the

statement that Chanley stated he used "a pay site" to find pictures of young boys is false

and is not supported by any statement Chanley made in his letters.

Fact 5 accurately states that Chanley lived with his sister, was using her computer,

and her internet activity.  It also accurately states that Chanley asked inmate Weir if he

wanted him to download something for him.  In the Feb. 24, letter, at the top of the page,

Chanley wrote:

1

2          I was unsure of what exactly you wanted with regard to the web site you
   mentioned?  Do you want me to download something for you?  Let me know.

3   I'll do the best I can for you.  I am indeed using my sister's P.C. and her
   connectivity.  Soon that will end.  I might have no connectivity at all.  My sister

4   is moving and my folks are moving into her house (they are buying it and she is
   moving into a rental).  The folks need me to work on this place for them, so I am

5   staying here.

6   Chanley admitted using his sister's PC, her connectivity, and staying at her residence.

7   Chanley also asked in the letter, "Do you want me to download something for you?"  Thus,

8   both of these statements in Fact 5 accurately reflect statements Chanley made in the

9   contents of his letters that were in Officer Gillis's possession, and upon which he relied in

10  making the affidavit.

11          Chanley argues that Officer Gillis asserted, in Fact 5, that he was "up to something

12  nefarious."  Contrary to Chanley's assertion, Officer Gillis did not assert that Chanley was

13
    up to something nefarious in Fact 5.

14
            In addition, reasonable inferences can be drawn from Chanley's letters that the

15
    pictures of young boys included with the letter were from Chanley's collections of pictures.

16
    In the Feb. 24, letter, towards the top of the page, Chanley also wrote, "I am enclosing

17
    more photos for you.  I think that you will like them.  Some is [sic] of my collections over

18
    time, and you will recognize the others."  Chanley admitted that the pictures he sent inmate

19
    Weir were from his "collections over time."  Chanley discussed his collection again on the

20

21  second page of his March 11, letter, to inmate Weir when he wrote:

22
            Did you get the full sized envelope I sent (so the pix [sic] wouldn't get
23      folded) with any problems?  I tried to enclosed [sic] a full set of images to help
    your days go by a little nicer. I hope Kalani and the model shots I have enclosed
24      are what you are interested in.  It's difficult to get good items of interest without
    any connectivity.  I have not [sic] land-line and no internet connectivity.

25      So . . . Basically you are receiving the fruits of my labor of love many moons

26

28

ago . . . One of my friends made CDs of all the data on my computers and put them away for me, and these are some of what I have recovered.

Someone with Officer Gillis's experience, knowledge, and training about sexual predators and those that receive and possess child pornography could infer from this language that the pictures of the young boys Chanley sent inmate Weir were from Chanley's collections. Thus, the above portion of fact 5 is accurate, as the statement is supported by reasonable inferences that could be drawn from Chanley's letters.

Fourth, the statement that Chanley used "a 'pay' site" to find pictures of young boys is, as the government acknowledges, unsupported by his letters. Chanley did use the phrase "pay site" in his letters. However, it appears from the Feb. 24, letter that it was a reference to using a pay site to find the location, in Washington, of either a person Chanley referenced as a friend, or the location of Chanley's son. (Chanley's letter is ambiguous as to whom he was attempting to find.) Chanley wrote:

I am also going to Washington to visit a friend, and hopefully, if he replies to my letter with the SASE I enclosed, my son Christopher Time will tell. I used one of those "Pay" sited [sic] to find him. Problem is…I'm not sure he is at that address. No phone was listed at all. So, time will tell.

Thus, as recognized by the government, Officer Gillis's statement that Chanley "us[ed] a 'pay' site to find them," in a context suggesting the pay site was used to find pictures of young men, was false.

### d.   Fact 6 is accurate.

Chanley challenges Fact 6 of Officer Gillis's affidavit, which states:

That in a third letter from Ybarra to affiant, Cianciulli talks of a road trip in which he refers to young boys as 'cuties.' Cianciulli describes taking pictures of these children with various cameras. He makes reference to film cameras as to be his preferred method of prints due to its clarity. He talks

about making attempts to obtain seats near children traveling alone in a
passenger train compartment near him.

The first sentence of this fact–"Cianciulli talks of a road trip in which he refers to young

boys as 'cuties,'"–is a reasonable inference that can be drawn from Chanley's letters.  In

his March 11, letter, Chanley states he will be "[t]aking a nice week long vacation" by the

time inmate Weir received the letter.  In his following letter, initially dated March 17,

Chanley begins: "I'm on a northbound train out of Bakersfield California [sic] heading for

Tacoma Washington [sic].  So far this has been an adventure."  The remainder of the letter

details Chanley's trip from Las Vegas, to Washington State, and back to Las Vegas.

Officer Gillis was accurate in stating that, in the third letter, Chanley talks of a road trip.

In arguments made to this court, Chanley appears to challenge Officer Gillis's further

statement that, in this letter, Chanley "refers to young boys as "cuties."  His challenge to

much of Fact 6 appears to rest upon his argument that his March 17 letter contains only

one description of a photograph of a child, rather than pictures of young boys referenced

as cuties.  (And, as to the asserted description of a photograph he admits making in the

letter, he further notes he described that he did not actually take a picture.)

Officer Gillis's statement that Chanley referred to young boys as "cuties" was

accurate, as the statement is reasonably inferred from Chanley's letters.  Chanley made

multiple references to "cuties" in his letters in connection with his travels.  The first cutie

reference was from the middle of the first page of the March 17 letter: "Have seen a couple

cuties on the way, but haven't had the device out to capture an image."  The second cutie

reference was from the second page, past the middle section: "Several cuties on board too.

To [sic] young but still an eye full."  These two references do not, standing alone, indicate

30

whether Chanley was referring to men, women, or children as "cuties."  However, Chanley also wrote in that letter that he was in the Tacoma train station and that "[t]here are several cuties on this leg.  One, about 8 is traveling along to Salem.  His grandma is about to shit over him being alone . . . telling him not to talk to strangers, not to leave his seat, not to go eat or to go to the observation car.  Poor little guy."  On the third page of the letter, towards the top, he wrote, "The little cutie is in the car in front of me, sitting all alone.  He gets off in Salem, as I said earlier."  In these sentences, all referring to the same individual that Chanley described as "one of the cuties," he refers to the individual using masculine pronouns (his, him, and he), describes the individual to be "about 8," and describes the individual as a "little guy."  A reasonable inference can be drawn from Chanley's statements that he was referring to a young boy, about 8 years old, as a "cutie."  Further, Chanley made two more references to "cuties" on the third and fourth pages of the letter: "The little cutie has a seat-mate a couple of years older (also a cutie)," and "Sorry. No cuties on this leg of the trip either.  Oh well, I have a story to tell you about the 14-yo blonde skater and his 7-yo little bro that were on last nights [sic] train.  Woohoo!" Therefore, the first sentence of Fact 6 of the affidavit is an accurate statement that can be reasonably inferred from Chanley's letters.

In the second sentence of Fact 6, Officer Gillis states: "Cianciulli describes taking pictures of these children with various cameras."  This statement also sets forth a reasonable inference that can be drawn from Chanley's letters.  As noted above, Chanley challenges the accuracy of the statement, asserting that his letter contained only a single description of a photograph of a child.  The argument rests primarily on ignoring each

description of taking photographs of children in which Chanley referred to taking photographs of a cutie or cuties.  As noted above, Chanley's letters permit the reasonable inference that he used the term "cuties" to mean young boys.  Thus, a reasonable inference can also be drawn, from Chanley's statements regarding taking pictures (or the lack of an opportunity or ability to take pictures) of cuties, that Chanley was describing taking pictures of these young boys.  On the first page of the letter, middle of the page, Chanley wrote, "Have seen a couple of cuties on the way, but haven't had the device out to capture an image. I will endeavor to do better."  Officer Gillis could reasonably infer that "the device" to which  Chanley referred was a camera, as Chanley used the word "device" followed by the phrase "to capture an image."  On the third page, towards the top of the page, Chanley expressly mentioned his desire to take pictures of "cuties," that is, young boys.  "The little cutie is in the car in front of me, sitting all alone. He gets off in Salem, as I said earlier.  Wish I could get a pic for you."

As conceded by Chanley, he describes a "Kodak moment" of a young boy with his mother on the second page of the letter, towards the top.

> There is a Kodak moment inside the station.  A boy, about 5, is sleeping on a bench next to his mom. He has one leg dangling off the bench, and is snuggling his worn teddy bear.  It's cute as hell, but I wont take the photo.  It would need a good size flash, which my little camera does not have. I wish I had my METZ flash.

Chanley's description of the scene, as well as his stated reason for not taking the picture (requires a flash his camera lacks), as well as his stated desire he had a specific flash he owned, further supports the Officer Gillis's statement that, in his letter, Chanley was describing taking photographs of children.

Finally, Chanley's letters permit the inference that, while on this trip, he took pictures of young boys.  On the second page of the March 17 letter, towards the middle of the page, Chanley wrote: "I took a lot of photographs, some of which I hope to include with this letter. Assuming dickhead will allow you to get them."  In the context of other statements made by Chanley in his letters, a reasonable inference can be drawn that Chanley took photographs of young boys on his trip and enclosed some of them in his letter to inmate Weir.  On the second page of his March 11 letter, in the second paragraph, Chanley wrote: "The dickheads in the mail room at Crowley are at it again.  Your best buddy Navaro has been capturing mail with photos of anyone under 18 and refusing to deliver them to any SO [sex offender] there."  A reasonable inference can be drawn that Chanley used the term "dickhead" to refer to an employee or employees at the Crowley penal institution who handle and distribute the mail that inmate Weir would receive from Chanley, and who had authority to prohibit delivery of certain items to inmates.  A further reasonable inference can also be drawn that Chanley believed (a) the prison was refusing to deliver to inmate Weir pictures of anyone under 18, and further believed (b) that, for this reason, the prison might not allow delivery of pictures he had taken on the trip and was sending to Weir.  Thus, in these additional statements, a reasonable inference can be drawn that Chanley was describing, to Weir, that he had taken photographs of young boys on the trip and had included them in his letter.

Considered as a whole, Chanley's statements in his March 17 letter, establish that Officer Gillis was accurate in his affidavit, and drew a reasonable inference from the letter, that Chanley described taking pictures of children.

The court would note the remainder of Fact 6 accurately represents the content of Chanley's letters.  Officer Gillis states, "He makes reference to film cameras as to be his preferred method of prints due to its clarity."  The statement is a reasonable inference that can be drawn from Chanley's letters.  In his March 11, letter, in the second paragraph, Chanley wrote:

> Film is NOT dead.  It is still the preferred medium for any 'artist' and for projects which require skill.  That is why I opted to get a manual camera like the F3 again.  Don't get me wrong, I absolutely want a Nikon or Fuji 35mm SLR Digital Camera, but I want film also.  There are still a lot of things that you can do with film that Digital cannot do . . . like extremely long time exposures, multiple exposures, and when I have dead batteries, my F3 will still work.

Also, in the March 17 letter, Chanley wrote, "I'll not be doing 1-hour photos, so the chemicals will be at the right temperatures and not cause your precious film to get all grainy and color shifted."  These two statements permit the reasonable inference, drawn by Officer Gillis, that Chanley referenced using film cameras as a preferred method of obtaining prints.

Officer Gillis also states, "He [Chanley] talks about making attempts to obtain seats near children traveling alone in a passenger train compartment near him."  Chanley argues that the only mention of a seat change in his letter is to temporarily gain access to a seat with a power outlet.  Chanley's argument mis-states Officer's Gillis's statement.  As already noted, Chanley repeatedly referenced a young boy, about eight, that was traveling alone in the car in front of him.  He wrote on the second page of the letter, towards the bottom of the page, "There are several cuties on this leg.  One, about 8 is traveling alone to Salem."  On the top of the third page, Chanley referenced the boy again. "The little cutie is in the car in front of me, sitting all alone.  He gets off in Salem, as I said earlier.  Wish I could get a

pic for you."  In the same letter, about a paragraph later, he wrote, "Still waiting for the

conductor to get me a seat in the next car forward.  I need a power outlet for my pc."  A few

sentences later Chanley referenced the young boy again.  "The little cutie has a seat-mate

a couple of years older (also a cutie).  The train picked up 100 passengers in Portland [sic]

Oregon, so It's [sic] full and my chances of getting a seat up there are about next to nil,

although I will bug the conductor for a seat with an electrical outlet again."  Thus, while

Chanley does state in his letter that a purpose of his desire to change was to obtain access

to a power outlet, in doing so he indicates he wanted to accomplish this purpose by moving

to "the next car forward."  Chanley also repeatedly describes, in his letter, the location and

seating arrangements of one young boy.  He describes the boy as being in the "car in front"

of Chanley.  Chanley is aware of the boy sitting alone, and is later aware that the boy is

sitting with another "cutie" (that is, another young boy) who appears to be a couple of years

older.  Considered in context, Officer Gillis accurately described the letter as a description

of Chanley's attempts to obtain seats near children traveling alone.

Accordingly, the Court finds that all of the statements within Fact 6 are accurate, and

could be reasonably drawn from the letters by a person, such as Officer Gillis, given his

training and experience with sexual predators and those that possess child pornography.

### e.   Officer Gillis was accurate in describing the letters as including conversations about young boys, and Kalani David in particular.

Chanley has noted, to this court, the following statement from Fact 2 of Officer

Gillis's affidavit: "The letters included conversation about young boys one in particular a

Kalani David in which he states that, 'He's the hottest thing in surfing right now for the 10

and younger.'" A review of Chanley's letters establishes that he made three references to

the Kalani David, including the direct quotation listed in the affidavit fact 2.  In his March 11,

2007, letter, middle of the page, Chanley wrote, "See the enclosed collage of Kalani David.

He's the hottest thing in Surfing [sic] right now for the 10 and younger."  In his Feb. 24

letter, Chanley wrote, "I've sent you a bunch of pictures of Kalani David. He's a 10 yo, born

in CR [Costa Rica] and one of the world's best surfers.  He also skateboards and races his

Honda in motocross.  He loves to jump." Later in that letter, Chanley wrote, "I hope Kalani

and the model shots I have enclosed are what you are interested in."  As noted, Chanley's

letter of March 17 included numerous statements concerning young boys.

Chanley's multiple references to young boys, and his specific reference to Kalani

David that Officer Gillis quoted, provide sufficient evidence that this statement from Fact 2

is accurate.

### f.    Officer Gillis's statements concerning Chanley's intentions to establish a confidential photograph printing facility.

In Fact 7 of his affidavit, Officer Gillis averred:

> That stated in the third letter, Cianciulli explains [sic] that he traveled to Washington State to pick up 'Film' camera equipment, photography gear, studio lighting, computer equipment, and items necessary to develop film. That his intention is to develop film and print items in his words "a confidential printing facility for folks," "No questions asked" for others who share in his taste on [sic] pictures of children and young boys.

Chanley does not dispute that, in his March 17 letter, he described his effort to travel to

Washington state, and that a purpose of the trip was to obtain various items, including

photography related equipment and computer equipment, and to have it shipped back to

Nevada.  At the bottom of the second page of that letter, he wrote, "I also have to worry

about getting my 520lb crate to Nevada."  He continued,  "I just have to pay for it, and get my friend to take it to the shipping terminal in Kent [sic] Washington."  Chanley discusses some of the items that he was shipping on the second page of the letter: "Bought an AlphaServer 4100 fully loaded off of Ebay.  It was in Seattle, and my friend and I went to get it."  He later wrote that all of his gear would work in Costa Rica and described the contents of the crate he shipped.  On the third page of the letter, Chanley wrote, "My 4100s will work just fine down there, as will the rest of my gear.  Got all my photography gear back (yeah, they are 'film cameras').  My studio lights are all safe and in the crate I mentioned previously."  Chanley further wrote that he would "have to investigate the costs for a good dye supplement printer, and a Fuji Film photo processor."

Chanley challenges Officer Gillis's statement that he intended to develop film and print items in a confidential printing facility--"No questions asked."  In his letter, Chanley stated: "I want to open a confidential printing facility for folks.  No questions asked printers. How's that for a name?"  Chanley asserts that Officer Gillis's statement is contrary to the context in which he made his statements in his letters, which he asserts was a brainstorming of ideas for employment or a business.  He notes that just prior to the above statements he also stated: "Maybe I can teach computer sciences down there [Costa Rica], or open a consulting firm specializing in high end computing solutions."  That Chanley may have been listing several ideas of possible future employment does not negate that, in so doing, he stated an intent to operate a confidential photograph printing facility, one in which (as indicated by the name Chanley proposed) he would not ask questions.

Chanley makes the further argument that, as his letters lack any "suggestive talk or

any mention of clients," Officer Gillis could not have reached the conclusion that this

printing facility would be for others who share in Chanley's taste of pictures of children and

young boys.  While Chanley is correct that he does not specifically state, in any of the

letters, that he intended his facility would be used by others who share in Chanley's taste in

pictures of young boys and children, such an inference can reasonably be drawn from the

totality of the letters, including his references to young boys as cuties, the nature of the

photographs Chanley was sending to inmate Weir, and Chanley's opinions regarding film

as a preferred medium for photography.  Officer Gillis could draw the reasonable inference

that Chanley intended to develop film and print photographs, and to do so in a confidential

facility, and that this facility would be available for use by other persons having similar

tastes in photographs of young boys.

> **g.    Officer Gillis accurately recited Chanley's intent regarding obtaining Italian citizenship.**

In Fact 9 of his affidavit, Officer Gillis states:

> That Affiant believes that the name Marco Donatonelli Cianciulli is an AKA for
> Mark David Chanley due to the fact that he is not trying to draw attention to
> himself or his past criminal history.  In the letters Affiant has read Chanley
> explains of his intention to gain his 'birthright Italian Citizenship' to allow him
> to work anywhere in the European Union.

Chanley concedes that he mentioned his intentions to become an Italian citizen in

his letters.  In his Feb. 24 letter, towards the bottom of the page, he wrote, "I am also

working on obtaining my birthright Italian Citizenship which will allow me to work anyplace

in the European Union."   In his March 11 letter, towards the top of the second page, he

wrote, "I am still working on getting my full Italian Citizenship.  Once that comes through,

then I can work anywhere in the EU without any problem, other than my own language

barriers."  Chanley cannot contest that he intended to become an Italian citizen, because

he expressly wrote that in the letters that he submitted to the court for consideration.

Chanley argues, however, that these facts are irrelevant to any unlawful activity.  As

noted previously, the full context of Officer Gillis's statements in Fact 9 is to indicate

Chanley's efforts to distance himself from his criminal history.  As Chanley wrote in his Feb.

24 letter,

> I also am sending them notice that my name(s) are my private property
> (common law copyright) and that I do not give them permission to use my
> property for any reason, and served them with a "Notice by Written
> Communication/Security Agreement" which pretty much spells out the
> consequences they will endure if they use my name (publish it, use it in any
> email(s), faxes, or any other way).

In his March 17 letter, Chanley wrote at the bottom of the first page:

> Right now I am in a fight with the Mexican whore of an AG that Nevada
> has.  I'm sure that she isn't pleased with the last mailing I sent her office.  The
> wetback cunt refuses to recognize my sovereign RIGHTS and has actually
> threatened to prosecute me if she "her office" finds that I do not obey the
> Nevada statutes.

Officer Gillis's knowledge that Chanley is a registered sex offender for a prior sexual

assault on a child would allow Officer Gillis to reasonably infer from the letters that Chanley

was attempting to prohibit the state of Nevada from publishing his name on the Sex

Offender Registry.  Additionally, Officer Gillis's training and experience in law enforcement

would allow him to infer that individuals, to deflect attention from their past criminal history,

are known to use aliases.  Officer Gillis could reasonable infer, and develop a belief, that

Chanley was using the alias "Marco Donatonelli Cianciulli" to not draw attention to himself,

as Officer Gillis had established that Chanley was a registered sex offender, who had been

arrested, had pled guilty, and had been sentenced to 8 years in Colorado for sexual assault

of a child, and was attempting to send child erotica in letters to an inmate still serving a

sentence in Colorado.

###### h. The false "pay site" statement is not necessary to a finding that the affidavit establishes probable cause.

No hearing is required if the material that is false, which falsity is alleged to have

been made deliberately or with a reckless disregard for the truth, is set to one side and

"there remains sufficient content in the warrant affidavit to support a finding of probable

cause. . . ." *Franks*, 438 U.S. at 171.[3]  The court has considered Officer Gillis's affidavit in

the context of Chanley's letters, consistent with arguments Chanley has previously made to

this court asserting the warrant was unconstitutional.  The court has also considered Officer

Gillis's experience, knowledge, and training about sexual predators and those that receive

---

[3]     The court would note that it appears doubtful from the context of Chanley's letter that, in making the false "pay site" statement, Officer Gillis acted deliberately or with a reckless disregard for truth.  Chanley began his Feb. 27 letter with an opaque reference to a web site, followed immediately by indicating a willingness to download something for Weir.  Chanley wrote that he "was unsure of what exactly you wanted with regard to the web site you mentioned? Do you want me to download something for you? Let me know. I'll do the best I can for you."  Chanley immediately follows this with a discussion that he has access to his sister's computer and "connectivety," but that status would soon end when his sister moves.  He then discusses a trip to Washington to visit a friend and his son.  He then states "I used one of those 'Pay' sited [sic] to find him," and notes his doubt about the result of the pay site search.  Chanley then immediately informs Weir that he is "enclosing more photos for you.  I think you will like them.  Some is of my collections over time, and you will recognize the others.  You wanted a few of another person next to 'Logan' in your letter.  I'm assuming you mean Logan Lerman?  I'll have to look and see which photo you want, and try to search for more.  I've sent you a bunch of pictures of Kalani David.  He's a 10 yo, born in CR and one of the world's best surfers."  Thus, immediately after mentioning his use of a "pay site" to find the address of either his friend or son, Chanley discusses photos he is sending to Weir, where he obtained the photos, Chanley's recognition that Weir desired photos of a specific person, and Chanley's willingness to fulfill that request, including doing a "search for more" photos.  Thus, the letter permits the inference that Chanley was using the internet to search for photos of an individual as requested by Weir.  It is in the midst of this series of statements Chanley was making–concerning his use of the internet, his willingness to search for photos of a specific person, and his description of photos actually being sent of a young boy–that Chanley references using a "pay" site (and used quotations marks in his letter), albeit to find an address.

40

and possess child pornography, which averments Chanley has not disputed.  After such

consideration, the Court finds that the only false statement made by Officer Gillis is that

conceded by the government: that Chanley used a pay site to find pictures of young boys

that were included in his second letter.  Absent this statement, there remains sufficient

content in Officer Gillis's affidavit to support a finding of probable cause that evidence of

child pornography would be discovered at Chanley's residence.  The Supreme Court in

*Illinois v. Gates* abandoned the technical approach for establishing probable cause and

returned to the "totality of the circumstances" test, which emphasizes that probable cause

means "fair probability."  *See United States v. Gourde*, 440 F.3d 1065, 1068 (9th Cir.

2006).  A judge does not need certainty or even a preponderance of the evidence to justify

probable cause, he only needs to apply a commonsense and practical approach that there

is a fair probability that evidence will be found.  *Id.*  The content of the affidavit includes

information that Chanley[4] was sending Weir photographs from his residence, that some of

these photographs constituted child erotica, that child erotica is commonly used by child

sexual predators to gain sexual arousal and is a precursor or an indicator of the possession

of child pornography.  The affidavit further establishes that some of the photos Chanley

was sending were from Chanley's collection, that Chanley had access to the internet, and

that Chanley asked Weir whether Weir wanted Chanley to download something for Weir.

The affidavit further establishes that Chanley refers to young boys as cuties, and describes

(in a letter describing a road trip) taking pictures of the young boys.  The same letter

---

[4]     The affidavit variously attributes the activity to "Chanley" and to "Cianciulli," and that Officer Gillis's involvement began when he was informed that Cianciulli was sending letters to Weir.  The affidavit establishes sufficient facts to find that Cianciulli was an alias used by Chanley.

41

described Chanley's efforts to obtain a seat near children traveling alone.  The affidavit further establishes Chanley's efforts to retrieve his photography equipment, his preference for using film to take pictures, and Chanley's intention to operate a facility for the confidential development and printing of photographs, "no questions asked."  The affidavit establishes that Chanley was previously convicted of sexual assault of a child, and had been sentenced to eight years.

The affidavit also sets forth the training and experience of Officer Gillis, including his knowledge that computers and the internet are used in the trafficking and collection of child pornography, that a collector of child pornography will maintain collections of child pornography for trading, including internet trading.  The affidavit sets forth Officer Gillis's knowledge and experience that collectors of child pornography rarely destroy or delete images, but retain the collections, keeping the material in their residence or other secure location.  Such collectors who use personal computers will retain their collections even through an upgrade of computers, transferring their collection of images from one computer to another.

When considered with common sense, the totality of the affidavit (absent the excised information regarding the pay site) is sufficient to establish a fair probability that Chanley was sexually interested in young boys, that Chanley obtained and sent child erotica from his residence to Weir, that Chanley maintained a collection of child erotica at his residence (some of which he sent to Weir), and that this collection included child pornography, and that it was highly unlikely that Chanley would destroy any images of child pornography that he had collected.  The totality of the affidavit (absent the excised

statement) is also sufficient to establish a fair probability that Chanley was using a

computer and the internet to search for photographs that could be used as child erotica,

including photographs of child pornography.  Accordingly, Chanley has failed to show that,

excised of the false statement, the affidavit does not support probable cause.  *See United

States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992).

### ii.   Officer Gillis did not need to attach Chanley's letters to his affidavit.

Chanley argues that Officer Gillis's affidavit was insufficient because he failed to

attach Chanley's letters to the affidavit, as required by the Ninth Circuit's decision in *United

States v. Anderson*, 453 F.2d 174 (9th Cir. 1971).  The argument is without merit.  Contrary

to Chanley's assertion, *Anderson* does not require "everything used to prove the existence

of probable cause be somehow attached to the Search Warrant Affidavit."  Rather, in

*Anderson*, the Ninth Circuit rejected the argument that, when an affidavit lacked sufficient

facts to establish probable cause, the warrant was not defective if the missing facts were

orally presented to the reviewing judicial officer.  Rather, the Ninth Circuit concluded that

"an affidavit must include all facts establishing probable cause. . . ."  *Id.,* at 176.  Officer

Gillis was not required to attach Chanley's letters to his affidavit.

### iii.   Officer Gillis was not required to comply with Federal Rule of Criminal Procedure 41.

Chanley argues that the search warrant obtained by Officer Gillis was not valid

because he did not comply with Federal Rule of Criminal Procedure 41.  Officer Gillis, as a

state police officer obtaining a search warrant from a state judicial officer, was not required

to comply with Rule 41.  *See United States v. Crawford*, 657 F.2d 1041 (9th Cir. 1981).

#### iv.   Officer Gillis's affidavit sufficiently established the information was not stale.

Chanley argues that Officer Gillis's affidavit failed to establish that the information contained therein was recent, because Officer Gillis did not include the dates of Chanley's letters. The argument is without merit. As stated by Officer Gillis, he was contacted on March 28, 2007 (about a month before submitting the affidavit) about letters that an inmate was receiving. The totality of circumstances contained within the statements of the affidavit establish, when considered with common sense, that Officer Gillis was discussing letters recently received by Weir, rather than letters Weir had long ago received.

#### v.   Whether Mr Green was deficient in failing to challenge the accuracy of Officer Gillis's affidavit.

The court has concluded that Chanley was not prejudiced by Mr. Green's failure to challenge the accuracy of Officer Gillis's affidavit. In so doing, it appears to the court that Mr. Green's decision to not challenge the accuracy of the affidavit was not deficient. First, Mr. Green was not the only counsel in this matter who made the tactical determination to challenge the affidavit without challenging its accuracy, and in so doing made the decision to not submit Chanley's letters to the court for consideration. Mr. Frankoff, who was subsequently appointed as counsel to represent Chanley, filed an untimely, second motion to suppress. In this second motion, Mr. Frankoff did not challenge the affidavit for its accuracy. Rather, he challenged whether the affidavit contained sufficient information to establish a fair probability that Chanley possessed child pornography, and whether the affidavit established that its information was not stale. Mr. Frankoff followed Mr. Green's strategy in challenging the affidavit without challenging the accuracy of the affidavit and

44

without attaching Chanley's letters.  A reasonable trial strategy is protected under

*Strickland*.  *See Correll v. Ryan*, 539 F. 3d 938, 948 (9th Cir. 2008).

Second, as established above, while Chanley's proposed tactic challenged

numerous statements in the affidavit, a comparison of the affidavit to Chanley's letters

reveals only one statement as false.  The benefit obtained by Chanley's proposed tactic

and argument was limited to excising that single statement.  Though the subject of the

statement was significant (whether Chanley used a pay site to find images of child erotica),

it was not material.  That is, after being excised from the affidavit, the remaining content of

the affidavit continued to indicate that Chanley was sending child erotica to Weir, that

Chanley was accessing the internet, and that Chanley asked Weir whether Weir wanted

Chanley to download something for him, and to otherwise establish a fair probability that

Chanley possessed child pornography.

Third, as established above, a necessary consequence of Chanley's proposed tactic

is that it requires the court to undertake a close examination of Chanley's letters to permit a

determination whether the affidavit was accurate, particularly as to the statements and

conduct attributed to Chanley, before considering whether the affidavit establishes

probable cause.  This close review of the letters not only confirms the accuracy of Officer

Gillis's statements, but emphasizes nuances of those statements damaging to a

subsequent challenge to the affidavit.  For example, Officer Gillis begins by noting that "the

letters included conversation about young boys one in particular a Kalani David . . .."  A

review of the letters emphasizes that Chanley's conversations about young boys was in all

of Chanley's letters to Weir, and that the discussion of Kalani David was in two different

letters.  Additionally, Officer Gillis refers to Chanley's third letter as a letter talking of "a road trip in which [Chanley] refers to young boys as 'cuties'."  A review of that letter emphasizes that the letter was written over the length of the trip, and that Chanley continually referred to young boys as cuties throughout the four-page letter.

As a further example, in his motion, Mr. Frankoff challenged the affidavit for staleness, a challenge that loses much of its effectiveness in light of Chanley's dated letters.  The submission of those dated letters emphasizes that the challenge was not to whether the information was stale, but whether the affidavit was devoid of any statements permitting a common sense determination that the information was recent.

The ultimate result of Chanley's proposed tactic, had it been adopted by counsel, would have been to undermine both counsels' challenges to the affidavit; The submission and consideration of the letters instructs and emphasizes to the court the import of Officer Gillis's statements that are critical in considering counsels' challenges.  Thus, it appears from the record that Mr. Green and Mr. Frankoff made the tactical determination to not present the court with the extremely inculpatory and relevant language of the letters, but limited their challenges to the face of the affidavit.

Accordingly, the court concludes that Chanley is not entitled to relief on either his first ground (that he received ineffective assistance of counsel) or his second ground (attacking the sufficiency of the affidavit and the warrant).  Regardless of whether Mr. Green was deficient in not challenging Officer Gillis's affidavit for accuracy, or failing to raise any of the  arguments Chanley asserted in his second ground for relief, Chanley was not prejudiced.  Rather, each of the arguments now raised by Chanley is without merit.

**E.      The indictment was not obtained through perjury.**

Chanley argues that, in eliciting the grand jury testimony of a witness, the prosecuting attorney asked "questions knowing that the reply would be a fabrication along the lines of the misleading and materially false statements provided by Officer Mike Gillis in his Application and Affidavit for Search Warrant."  As previously discussed, Officer Gillis's affidavit contained only one inaccurate statement, and that statement was not material to the finding of probable cause.  Further, Chanley's argument rests upon his own speculation that the witness was aware of that single inaccurate statement.  Chanley is not entitled to any relief on ground four.

**F.      Chanley's claim that the verdict was obtained via vindictive prosecution and prosecutorial misconduct is without merit.**

Chanley asserts that he is entitled to relief from his conviction because the prosecution was vindictive, as established by the government entering into, and then breaching, a stipulation with Mr. Frankoff that it would not object to Chanley's second motion to suppress as untimely.  The record does not contain any such stipulation.  The record does establish that the government responded to the second motion to suppress by moving to summarily dismiss it as untimely.  See, Doc. #78.  Mr. Frank opposed that motion (See, Doc. #81), acknowledging that the motion was untimely.  He further raised several arguments as to why the court should consider the motion on the merits, but made no mention of any agreement or stipulation in his response.  The ground for relief is without basis and dismissal is appropriate. *See Shah v. United States*, 878 F. 2d 1156, 1158 (9th Cir. 1989); *see also Wagner v. United State*, 418 F. 2d 618, 621 (9th Cir. 1989).

47

1  **V.    CONCLUSION**

2      Having reviewed each ground for relief Chanley has asserted in his §2255 motion,

3  and the amendments and supplements thereto, the court concludes that each ground for

4  relief is without merit and that summary dismissal is appropriate.

5

6      Therefore, for good cause shown,

7      THE COURT **FURTHER ORDERS** that Defendant Mark Chanley's Motion to

8  Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28

9  U.S.C. §2255 (#234, as amended and supplemented in ## 230, 237, 240, 243, 244, 245,

10 and 263) is DISMISSED;

11     THE COURT FURTHER **ORDERS** that Defendant Mark Chanley's Motion for

12 Judgment (#247) is DENIED as moot.

13

14     THE COURT **FURTHER ORDERS** that the Clerk of the Court shall serve a copy of

15 this Order on both the Defendant and the United States.

16

17 DATED this _____ day of September, 2014.

18

19

20                                                                  Lloyd D. George
                                                                    United States District Judge
21

22

23

24

25

26